L. W. FLACK, Plaintiff, v. LINDEN BANK, Defendant; GUY H. HALL, Receiver, Appellee; L. A. ANDREW, State Superintendent of Banking, Appellant.

No. 39852.

JANUARY 21, 1930.

REHEARING DENIED. OCTOBER 23, 1930.

*John Fletcher*, Attorney-general, *Ben J. Gibson, Clarence I. Spencer,* and *White & Clarke,* for appellant.

*Graham & Osborn* and *Bradshaw, Schenk & Fowler,* for Guy H. Hall, Receiver, and the Linden Bank, appellees.

GRIMM, J.—The Mechanics Savings Bank was a savings bank, engaged in business in Des Moines. It closed its doors on or about the first day of January, 1925, and the superintendent of banking was appointed as receiver. The Linden Bank was a private one, its sole partners being L. W. Flack, Charles G. Cockerill, Parke L. Cockerill, P. C. Cockerill, and May C. Warrington. Flack was the cashier, and was in active charge. On November 9, 1925, Hall was appointed receiver of the Linden Bank.

During the year 1919 a corporation known as the Associated Packing Company was organized under the laws of Iowa, with its principal place of business in Des Moines. Its avowed purpose was the erection, maintenance, and operation of a packing plant at that point. Its capital was to be received from the sale of stock. Large quantities of the stock were sold on subscription contracts, taken mostly after the corporation was organized, and in most instances, only a small portion of the purchase price of the shares of stock was paid in cash, and the balance of the purchase price was evidenced by subscribers' notes. During the same year, there was organized in Des Moines a partnership known as the Messenger-Rowe Syndicate, the apparent purpose of which was negotiating the sale of notes and other similar evidence of indebtedness. George H. Messenger, at that time superintendent of banking, George L. Rowe, at that time cashier of the Mechanics Savings Bank, Vernon W. Miller, and E. J. Morrissey were the partners in the Messenger-Rowe Syndicate. In October, 1919, one McDougal, representing the Associated Packing Company, and Flack, representing the Linden Bank, entered into a written contract, by the terms of which the Linden

Bank took over about $1,500,000 par value, of the subscription notes of the Associated Packing Company. Messenger, it appears, was active in securing the execution of this contract. Very shortly after this contract was executed, an oral agreement was entered into between the Linden Bank, on the one hand, and the Mechanics Savings Bank, the Van Meter Bank, and the Messenger-Rowe Syndicate, on the other, whereby each of said three banks should furnish one third of all the money required to meet the obligations imposed upon the Linden Bank by its contract with the Associated Packing Company. The Messenger-Rowe Syndicate was to render aid and assistance in the performance of the necessary transactions connected with the contract. The profits which might arise were to be divided, one fourth to each of the three banks, and one fourth to the Messenger-Rowe Syndicate. If, at any time, the Mechanics Savings Bank or the Van Meter Bank became dissatisfied, each was to be permitted to surrender its Packing Company notes, receive from the Linden Bank the unpaid portion of the money advanced, and withdraw from the arrangement entirely.

For the purpose of carrying out the terms of this oral agreement, Mr. Flack, representing the Linden Bank, obtained a safety deposit box in a Des Moines bank, one key to which he kept, and one key was kept by Mr. Rowe. Whenever the Associated Packing Company desired money, it called upon the Linden Bank, and it would then call upon the other two banks for their proportionate amount of the money desired; so that, when the money was paid to the Associated Packing Company, it consisted of money advanced one third by each of the three banks. Whenever money was so advanced, notes were taken from this safety deposit box, and delivered approximately one third to the Linden Bank, one third to the Mechanics Savings Bank and one third to the Van Meter Bank. This course of business continued until the 27th day of February, 1920, at which time the amount advanced by each of the three banks was $93,798.05.

On the 27th day of February, 1920, the attorney-general of Iowa began an action in the district court of Polk County, asking for the dissolution of the Associated Packing Company and for the appointment of a receiver. This action was based upon certain claimed frauds in the organization of the company and in the conduct of its business. The Linden Bank was a party to this suit. It was alleged, among other things, that the Linden

Bank had in its possession notes of subscribers to the stock of the Associated Packing Company in excess of $1,000,000 face value, and an injunction was asked, restraining the Linden Bank from disposing of these notes. The Linden Bank answered that it had in its possession Associated Packing Company notes of the par value of $1,863,398.40, which notes came into its possession by virtue of the contract above referred to. The Linden Bank claimed that it advanced to the Associated Packing Company, above all reimbursements, the sum of $298,016.96.

On March 16, 1920, a receiver was appointed for the Associated Packing Company, and on October 22, 1920, after a trial, a decree was entered, ousting the corporation, revoking and annulling its charter, and ordering the liquidation of its assets and the distribution of its avails as the court might order. A permanent injunction was issued against the Linden Bank, preventing it from selling or disposing of its stock or subscription notes.

On or about the 17th day of November, 1920, the Linden Bank filed a claim against the Associated Packing Company receiver, asking for the establishment of a preferred claim to the extent of all sums advanced by the three banks, the Mechanics Savings Bank, the Van Meter State Bank, and the Linden Bank, under the contract between the Associated Packing Company and the Linden Bank. On June 2, 1922, the court entered an order allowing the claim to the extent of $216,751.10 as a general claim, and the balance as a preferred claim. One of the conditions imposed by the trial court hearing the Linden Bank claim was that the Linden Bank should surrender to the Packing Company receiver all Associated Packing Company notes which had come into its possession under the terms of the original contract.

On March 10, 1920, about 11 days after the ouster suit was brought against the Associated Packing Company, all the Associated Packing Company's subscribers' notes held by both the Mechanics Savings Bank and the Van Meter State Bank were taken up by the Linden Bank, and accommodation notes, signed by the partners composing the Linden Bank and the parties composing the Messenger-Rowe Syndicate, were deposited with the said banks, in amounts equivalent to the face value of the subscribers' notes so taken up. It is the contention of the claimant that an oral agreement was entered into between the Linden Bank, on the one hand, and the Mechanics Savings Bank, on the

other, whereby the amount of money advanced by the Mechanics Savings Bank to the Linden Bank for the Associated Packing Company which had not been paid back would be paid by the Linden Bank out of its receipts on its claim against the Associated Packing Company receiver, and that the substituted accommodation notes were mere tokens of the indebtedness, and were not to be paid by the makers; while, on the other hand, it is claimed by the receiver of the Linden Bank that the substituted notes were received by the Mechanics Savings Bank in lieu of the Associated Packing Company notes, and in full payment of the Mechanics Savings Bank claim against the Linden Bank for moneys advanced to the Linden Bank for the Associated Packing Company.

Very briefly stated, the foregoing is the controversy in this case. It has many ramifications, and the arguments are exhaustive upon many branches of the contest. Furthermore, the testimony is much in conflict, and much of it was taken subject to objections. A very similar case on behalf of the Van Meter State Bank was submitted concurrently with this case.

In the Van Meter case, it appears that the first step in the transaction resulting in the exchange of notes was an order by Messenger, then president of the Van Meter Bank, to Dunn, the cashier, to send the Associated Packing Company notes then not due to the Linden Bank for collection; while in this case it is claimed that McKinnon, president of the Mechanics Savings Bank, who died in September, 1920, began demanding of Rowe, the cashier and managing officer of the Mechanics Savings Bank, that the Linden Bank take up the Associated Packing Company paper in the Mechanics Savings Bank.

As previously stated, the original contract provided that either the Mechanics Savings Bank or Van Meter Bank could at any time withdraw, surrender its notes, and demand the return of moneys advanced. At all events, the Associated Packing Company notes were surrendered to the Linden Bank, and the accommodation substituted notes hereinbefore referred to were placed with the Mechanics Savings Bank. Rowe testified, among other things, to the effect that he understood that these substituted notes were evidence of a claim held by the Mechanics Savings Bank against the Linden Bank. At one point in the record, Rowe said:

"The notes executed by Cockerills and others were accommodation notes for the use and benefit of the Linden Bank, and were to be paid by the Linden Bank. * * * At that time it was understood that these notes, the Cockerill notes, that were turned over, were evidence of indebtedness between the Linden Bank and the Mechanics Savings Bank."

Other portions of his evidence are somewhat in conflict herewith.

There is evidence in the record tending to show that the books of the Linden Bank showed bills payable on March 9, 1920, of $25,000, and that from March 10, 1920, all such bills payable were in the sum of $212,596.76, which equals the $25,000 plus the claims of the Van Meter Bank and the Mechanics Savings Bank, in the sum of $93,798.38 each.

It is without dispute in the record that no consideration passed to any of the makers of the substituted notes, and the said makers are in substantial harmony in stating that they were not expected to ever pay the notes, when they made them, and that they also understood, at the time of the transactions and afterwards, that the claim of the Mechanics Savings Bank and the claim of the Van Meter Bank were each to be paid by the Linden Bank out of its recovery on its claim against the Associated Packing Company receiver. Several witnesses so testified. It is true, some of the evidence was taken in the face of strenuous objections, but at least a part of it was competent.

There is also evidence in the record that some of these substituted notes were, for a time at least, secured collaterally by certificates of deposit in the Linden Bank. The testimony of W. H. Vander Ploeg, examiner in charge of the Mechanics Savings Bank, is to the effect that he negotiated with Flack, then cashier of the Linden Bank, in reference to these substituted notes. This was at a time when some collateral was being exchanged, and he, Flack, was there on business for the Linden Bank. Vander Ploeg testified that Flack, on that occasion, stated that the Associated Packing Company notes were taken up for the purpose of establishing them as a claim against the receiver of the Associated Packing Company, and that the substituted notes were to be held and paid from the collection of the Associated Packing Company claim. He assumed that there was no personal liability on these substituted notes, and that it was understood, at

the time the notes were taken by the Mechanics Savings Bank, that there was to be no personal liability on the makers of the substituted notes. He advised Vander Ploeg that the claim had been filed and established, and that a dividend had been paid, one third of which had been credited to the Mechanics Savings Bank, one third to the Van Meter State Bank, and one third to the Linden Bank, and that the balance of the claim of each of these banks would be paid in the same ratio by the Linden Bank out of the proceeds of the Linden Bank's claim against the Associated Packing Company. On that occasion, Flack told Vander Ploeg that George (Messenger) ''handled the entire matter.''

Vander Ploeg also testified that Messenger advised him that the notes were accommodation paper in behalf of the Linden Bank, and that they were to be paid out of the proceeds of the Linden Bank's claim against the Packing Company. Vander Ploeg testified that he relied on these statements and promises, and that on that account the substituted notes were carried along, and no effort was made to enforce them.

John Gibson, who was president of the Mechanics Savings Bank from October, 1920, to the year 1923, testified, in reference to conversations he had with two of the Cockerills, who were members of the partnership composing the Linden Bank, that they too confirmed the original agreement to the effect that the Linden Bank would pay the claim of the Mechanics Savings Bank out of the proceeds of the Linden Bank's claim against the Associated Packing Company's receiver. There is other testimony in the record to the same effect.

The claim of the Mechanics Savings Bank does not rest alone upon this. It is not in dispute that, on December 20, 1922, the Linden Bank made a distribution of dividends received by it on its claim against the Packing Company receivership in equal parts, one third of which went to the Mechanics Savings Bank. Here, then, we have the definite positive action of the bank, taken almost three years after the alleged oral agreement, in complete harmony with what it is claimed was contained in the oral agreement. If Messenger and the others who, it is claimed, represented the Linden Bank, in the making of this oral agreement, were not authorized by the Linden Bank to make the agreement, why did the Linden Bank, on December 20, 1922, make this distribution in accordance with the terms of the said oral contract? Mani-

festly, it is significant that the substituted notes were made by every partner constituting the Linden Bank and every partner constituting the Messenger-Rowe Syndicate. Everybody interested as owner in the Linden Bank must have known about the transaction, and this distribution of dividends in accordance with the terms of the claimed oral agreement is most persuasive evidence that the contract was made as claimed, and that the Linden Bank agreed to pay the claim of the Mechanics Savings Bank out of the proceeds of the Linden Bank's claim against the Associated Packing Company.

There is another very significant circumstance, undisputed in the record. The substituted notes were renewed several times, and each time for the original amount. In other words, interest on the principal of the original substituted notes was neither paid nor added into the renewal notes. This is more significant and persuasive than any evidence given on the trial to the contrary that the substituted notes were not received by the Mechanics Savings Bank in lieu of the Associated Packing Company notes and in payment for the claim of the Mechanics Savings Bank against the Linden Bank. These transactions took place long before this litigation was started. Had the Mechanics Savings Bank agreed to a novation, and had it been looking to the makers of the substituted notes for the payment of its claim, it stands to reason, and squares with the general experience of business men, that either it would have demanded the payment of interest at the time of the renewal of the notes, or the interest would have been added into and made a part of each renewal note. It is apparent that these substituted notes were but tokens of the claim of the Mechanics Savings Bank against the Linden Bank. Possibly it became necessary to have in the files of the bank such paper, in order to satisfy the bank's bookkeeping, or the demands of bank examiners. But whatever may have been the purpose, we are satisfied that there was no novation.

The record shows that, at the time these notes were substituted, the makers were abundantly solvent, and that, at the time this claim was filed, most, if not all, of them were insolvent. Equity will not permit the Linden Bank and its representatives to lull the Mechanics Savings Bank into security by its promises and representations to make payment out of the proceeds of the Linden Bank claim in the Associated Packing Company receiver-

ship, and then keep the proceeds of the collection of the claim, notwithstanding the fact that two thirds of the claim is based upon money advanced to the Linden Bank for the Associated Packing Company by the Mechanics Savings Bank and the Van Meter Bank.

While it is true that there is no resolution by the Linden Bank authorizing Messenger or anyone else to enter into the alleged oral agreement with the Mechanics Savings Bank in reference to payment of the claim, and while it is  true that Flack testified that, in so far as he knew, no such authority was given, nevertheless a careful study of the conflicting testimony and the entire record of this case satisfies us that the Linden Bank did agree, as consideration for the surrender of the Packing Company notes then held by the Mechanics Savings Bank, to pay the Mechanics Savings Bank its claim as and when the Linden Bank recovered on its claim against the Associated Packing Company receivership. Agency can be proven by circumstantial evidence as well as by formal resolution or affirmative testimony. Furthermore, the claim is not barred. The oral contract was partly performed on December 20, 1922. This claim was filed on April 19, 1926. There is no showing in the record that the Linden Bank has yet received anything on its claim against the Associated Packing Company receivership since the distribution of December 20, 1922. Furthermore, there is no showing of a refusal by the Linden Bank or its receiver to pay the claim of the Mechanics Savings Bank until its answer to the petition of intervention of the Mechanics Savings Bank filed in this suit.

To discuss the other numerous questions raised would unduly extend this opinion. Further quotations from or comment upon the evidence would be of no value. The record has been carefully read and carefully considered, and we reach the conclusion that the appellant is entitled to recovery as prayed, and

the cause is remanded for a decree in accordance with this finding.—*Reversed.*

Evans, Faville, De Graff, Kindig, and Wagner, JJ., concur.

Morling, C. J., not participating.